U. S. FIDELITY & GUARANTY Co. *v.* BAIRD ET AL.

[81 South. 483, Division B. No. 20511.]

1. EQUITY. *Decree pro confesso. Vacation. Action against foreign insurance company. Delay in receiving summons.*

Where, in a suit against a nonresident insurance company, summons was served upon the insurance commissioner, who mailed it at once to the defendant, who in turn immediately mailed it to its attorney in the district embracing the county in which suit was brought, but such attorney on account of delay in the mails and without fault of defendant did not receive the summons until after the day upon which appearance should have been made. In such case, a decree *pro confesso* and final decree rendered thereon before the attorney had an opportunity to answer should have been set aside by the court in exercise of its discretion, where the motion therefor set up a good defense.

2. EQUITY. *Decree pro confesso. Setting aside.*

While it is not the purpose of the statute nor of the courts, to permit the defendant to be negligent and to unreasonably delay the complainant or plaintiff in a suit in having his rights adjudicated, yet where it appears that the delay was caused through agencies beyond the control of the defendant, and that justice will be promoted by trying a case upon its merits a decree should be set aside.

APPEAL from the chancery court of Sunflower county. HON. E. N. THOMAS, Chancellor.

Bill by Joe B. Baird and others against the United States Fidelity & Guaranty Company. Defendant's motion to set aside decree *pro confesso* and final decree for plaintiffs being denied, defendants appeal.

The facts are fully stated in the opinion of the court.

*Pollard & Hanner, Wm. M. Hall* and *Watkins & Watkins,* for appellant.

Appellant's Contentions. "Good cause" shown for setting aside decree *pro confesso* and allowing time to answer. Complainants did not make a case for final decree and *pro confesso.*

Propositions Of Law. Decrees *pro confesso* should be set aside where defendant shows meritorious defense and complainant suffers no injury as the result, beyond loss of time and the supreme court will reverse the lower court for not so doing. *Grand Lodge Col. K. P.* v. *Yelvington,* Ill Miss. 352, 71 So. 576; *Field* v. *Junkin,* 99 Miss, 834, 56 So. 172; *Yost* v. *Alderson,* 58 Miss. 40.

A bill indefinite and uncertain in allegations taken *pro confesso* does not warrant final decree. 16 Cyc. 494; *Spears* v. *Cheatham,* 44 Miss. 72; *M. & C. R. R. Co.* v. *Neighbors,* 51 Miss. 442. Papers referred to in bill not part thereof unless original or copies attached. 8 Ency. Pl. & Pr. 742; 4 C. J. P. 112, Sec. 1723; Code, section 579; Hem's Code, 339.

Exhibits proved only by affidavits filed in clerk's office before hearing, taken on two days' notice, or by witnesses at the hearing on two days' notice to opposite party. Code, section 580; Hem's Code, 340. Decrees or judgments ordering administrator to pay creditors amount to their claims raised no presumption of assets. *Howard* v. *Cousins,* 7 How. 114; *Lee* v. *Gardiner,* 26 Miss. 521; *Dobbins* v. *Halfacre,* 52 Miss. 561; Code, section 1765; Hem's Code, 290.

Proceeds from life insurance policies not assets of estate and administrator's bond not liable therefor. 18 Cyc., 1257; *Jones* v. *Patty,* 73 Miss. 179. Bill must be subscribed by party or solicitor and if not, no decree should be granted thereon and bill should be stricken by court of its own motion. Code, section 576; Hem's Code, 336; Supreme Court on Appeal will reverse

where decrees not warranted by record.     *Garland* v. *Hull*, 13 S. & M. 76; *Spears* v. *Cheatham*, 44 Miss. 64; *Kitchins* v. *Harrell*, 54 Miss. 474; *Belew* v. *Jones*, 56 Miss. 342; *George* v. *Solomon*, 71 Miss. 168; *Austin* v. *Barber*, 88 Miss. 553; *Reed* v. *Gregory*, 78 Miss. 247; *Penn. Mutual Life Co.* v. *Keeton*, 95 Miss. 709; *Breck* v. *Smith*, 44 Miss. 690.

*Moody & Williams,* for appellees.

The statute says that a decree *pro confesso* shall not be set aside except on good cause shown. We submit that even the allegations of the motion do not bring appellant's case within the meaning of "good cause shown;" but the court, anxious to see that no injustice had been, or might be, done appellant, took proof on the motion and offered appellant every opportunity to substantiate the allegations of its motion, but without a-vail. What testimony did it introduce on the motion? Simply and only the two inventories, the last made in response to an order of the court directing it, and disclosing large amounts of property not mentioned in the former and contradicting, instead of supporting, the motion. In such case, there was nothing left the chancellor except to overrule the motion and let the final decree stand.

The chancellor exercises his discretion in sustaining or overruling such motions; and whether or not good cause had been shown is a question of fact; this question of fact has been decided by the chancellor adversely to appellant, and unless it can show affirmatively that such finding was not supported by the evidence, the decree should be promptly affirmed.

It is true that the statute requires that the pleadings should be signed by the parties or their solicitors, but the truth is that the railroad companies who are appellees here, were represented in the lower court by ourselves,

who also represent the appellee, Joe B. Baird, and represented him in the court below. We did not, and do not, consider it necessary that we should sign the petition twice, as representing the various parties. But, be that as it may, it was the duty of appellant to bring the matter to the attention of the court while it might be corrected

"The omission of a proper signature is by some decision held to be ground for demurrer; by others a ground for motion to strike from the files, but a failure to sign a pleading, not being a defect in substance, does not render a judgment void." 31 Cyc., page 525. The other points raised in appellant's brief are so ably argued and completely refuted by logical argument and sound authority that we deem it a waste of time to attempt further discussion.

*Chapman & Johnson,* for appellees.

Appellant relies on two grounds for reversal: First. The refusal of the chancellor to set aside the decree *pro confesso,* and the final decree, upon motion, and the showing made by appellant; and, Second. The error of the chancellor in granting appellees a decree on the record.

Even a casual reading of the record, and of the decisions cited by appellant to sustain its contention that the chancellor should have set aside the decrees on the motion and the showing made, will demonstrate that appellant has failed to bring itself within the rule announced by those decisions. A *pro confesso* will not be set aside without "good cause" shown. The only evidence offered by appellant in order to show a "good cause" for setting aside the decree *pro confesso* was the inventories, and they contradict the allegations of his petition. The petition was not sworn to, there were no affidavits whatever filed, and no proof was offered as to the truth thereof; there was nothing before the

chancellor on the hearing of the motion to show when the appellant received the notice of the suit, and whether there was any delay or not in receiving it; neither was any showing made as to what proof could be made as to the assets which came into the hands of the administrator, and for which his bondsman is liable, that could possibly have changed the decision of the court, because the only showing that was made by the appellant is directly in conflict with the allegations of his petition.

It is held in the cases cited by counsel opposite that setting aside a decree *pro confesso* is a matter within the sound discretion of the chancery court, and such action will not be disturbed, unless there has been an abuse of discretion; if the chancellor has refused to set aside a decree *pro confesso* then the defendant must show that there has been some abuse of discretion. The record fails to show any abuse of discretion; the defendant in the court below wholly failed to show any good cause to the chancellor for setting aside the decree *pro confesso;* in fact, showing no cause at all that was tangible, but making only vague and indefinite allegations, entirely unsupported by any proof. Appellant did not show when the notice of suit was received by it, or that it exercised due diligence in preparing to defend the the suit, or that it had a meritorious defense. So far as the record shows it could have received the notice from the Insurance Commissioner, and given its local attorney notice in ample time to prepare a defense, or, at least, obtain time to answer; sometimes even the telegraph is used. No snap judgment was taken against the appellant, because the appellee waited more than one week after the return day before asking for a decree *pro confesso;* process was served on the Insurance Commissioner two full weeks before a decree *pro confesso* was asked for; the Insurance Commissioner forthwith notified appellant, and until the contrary appears,

the presumption will obtain that the notice was received in due course of mail.

Opposing counsel of course, knew that the suit would be filed returnable to the December term of court, as the firm of Chapman & Johnson had been requested by him not to bring suit on their claims until he could see them about the matter in person; in reply to their letter to him dated November 22nd he stated that he would not enter an appearance, or do anything in the case by consent, and wanted his client to be brought into court in the manner provided by law; at his request his client was brought into court just as the law requires, and he has been complaining ever since. In view of the corespondence, and the position taken by him, the courtesies suggested in his brief could hardly be expected.

Clearly there was no negligence on the part of appellant's counsel, after formal notice of the suit was received by him from his client; by his own statement the first notice that he had of the suit from his client was on December 19th, and the petition to set aside the decree *pro confesso* was filed on December 20th; anyway, we are not charging counsel with being negligent, but his client; and his client has failed to show that it was not negligent, or an excuse for its negligence as it devolved on it to do; not only has appellant failed to show that it was not negligent, but it has failed to show that it did not receive the notice of the suit as promptly as it could be transmitted through the mails, that it exercised any degree of diligence, or that any proof could have been offered to show that it is not liable, or that would have changed in any respect the decree against it; in short, it made no showing whatever on the motion to set aside the decree *pro confesso* of cause thereof. The statute not only states, but enjoins, that a *pro confesso* shall not be set aside without good cause shown. A bare, bald, unsupported allegation in an unverified petition would hardly constitute showing good cause.

ETHRIDGE, J., delivered the opinion of the court.

Joe B. Baird and numerous other creditors of the estate of C. D. Finley, deceased, filed a bill in the chancery court of Sunflower county against the United States Fidelity & Guaranty Company, surety on the administrator's bond, alleging that C. D. Finley died, and that C. C. Finley was appointed administrator of his estate on the 27th day of December, 1915, and made administrator's bond in the penalty of ten thousand dollars with the United States Fidelity & Guaranty Company as surety thereon; that the administrator, undertaking to administrate said estate, came into possession and took charge of a large amount of money and other personal property as shown by an inventory filed on March 29, 1916, and an additional inventory filed on November 16, 1916, and that the petitioners on information and belief state that there came into the hands of the administrator money and other personal property in addition to the property mentioned in the said inventories; that the value of the property which came into the hands of the administrator was, petitioners are advised and believe and so state, in excess of the sum of ten thousand dollars the penalty of said bond. They further allege that the administrator has dissipated the assets of the said estate, and that they can find no property to subject to their claims against the said estate, and that the deceased owned no other property than that which had come into the hands of the administrator. It is further alleged that the several debts of the several petitioners as set forth have been probated and allowed, and prayed for a judgment against the United States Fidelity & Guaranty Company for the amount of each of the several probated claims aggregating eight thousand, three hundred, thirty-three dollars and fourteen cents with six per. cent. interest thereon from the time of probation. The bill of complaint was not signed by some of the petitioners either in person or by attorney. Proc-

ess was issued on the 1st day of December, 1917, direct-
ing the sheriff to summon the United States Fidelity &
Guaranty Company, and was served upon the insurance
commissioner of the state of the Mississippi on the 3d
day of December, 1917. The summons directed appear-
ance to be on the second Monday of December, 1917, and
was returned executed December 3, 1917.

¶ Under the statute of Mississippi, a foreign insurance
company must designate an agent upon whom process
may be served within the state of Mississippi, and the
appellant had designated and constituted T. M. Henry,
the insurance commissioner, as its agent upon whom
process might be served. The insurance commissioner
mailed this summons served upon him to the United
States Fidelity & Guaranty Company at its home office
in Baltimore, Md., and it was remailed by the said
company to its attorney at Memphis, Tenn., who was
the attorney for the company within the district em-
bracing Sunflower county. By some delay the summons
failed to reach the attorney prior to the second Mon-
day in December, 1917, and did not reach him until the
19th day of December, 1917. In the meantime a de-
cree *pro confesso* and a final decree thereon had been
taken in the chanery court of Sunflower county, render-
ing judgment against the appellant in favor of the sev-
eral appellees.

The *pro confesso* decree was taken on the 17th day
of December, 1917, and the final decree on the 18th day
of December, 1917, and on the 20th day of December,
1917, a motion was filed to set aside the decree *pro
confesso* and final decree so taken, and it was alleged
in the said motion that the failure of the defendant
to answer the said bill was brought about by reason
of delay in the mails which bore to the company the
knowledge of the pendency of the suit, and that the
process was served on the insurance commissioner on the
3d day of December, returnable on the 10th day of De-
cember, and that the insurance commissioner had

transferred the summons by mail to its home at Baltimore, Md., and that the defendant immediately took the matter up with its counsel at Memphis, Tenn., and authorized and requested him to represent it in his cause, and that for some reason unknown to the defendant said counsel did not receive said notice until December 19, 1917, and that it was the purpose of the defendant to defend the suit, and that if allowed to try the cause on its merits no liability would be shown in favor of the complainants against the defendant; that the defendant is advised and believes that all of the money which came into the hands of the administrator was from policies of insurance collected on the life of the deceased, and that the proceeds of said insurance were exempt, and belonged to the heirs of the decedent, freed from the claims of his creditors; that the only other property belonging to the said deceased was an equity in certain lumber contracts shown in the inventory, and that the operations under the lumber contracts were made at a loss to the estate, and that nothing was realized by the estate from said contracts; that the claim of Dorcas M. Finley had been settled by the administrator; and further that the action should have been brought against C. C. Finley, the administrator, and the United States Fidelity & Guaranty Company, jointly, and not against the defendant alone.

The defendant offered to file answer within such reasonable time as the court might allow, and gave as an excuse for not filing the answer with the motion that the defendant had not had time since the notice of the filing of the suit was actually received to prepare an answer; that great injustice would be done unless they were allowed to try the cause on its merits. The inventories of the administrator were introduced in evidence on the hearing of the motion, and showed five thousand dollars collected on the insurance policies payable to the estate of deceased, and nine hundred eighty-five dollars and eight cents in cash, and one thousand

dollars insurance policy payable to Ella Finley, Claude Finley, and Dorcas M. Finley, five hundred dollars being payable to Ella Finley, wife of deceased, who died prior to the death of the deceased, C. D. Finley, and also showed certain lumber contracts between the decedent, C. D. Finley, and the Kemler Lumber Company, an Illinois corporation. The second inventory showed certain sawmill machinery, teams, wagons, and other appurtenances without showing the value thereof.

It appears in the record that Dorcas M. Finley had sued the administrator in the chancery court of Warren county for her interest in all of the insurance policies, and in that suit the same chancellor who decided the case below adjudicated the insurance policies exempt to the heirs of Finley, deceased, to the amount of five thousand dollars, and adjudicated the interest of Ella Finley in the one thousand dollar policy payable to her, Dorcas Finley, as heir of said Ella Finley, and directed the administrator to pay her shares to her.

By chapter 175, Laws of 1908, amending section 2141 of the Code of 1906, it is provided that the proceeds of life insurance not exceeding five thousand dollars payable to executor or administrator of the insured shall inure to heirs or legatees freed from all liability for the debts of the decedent. Under this act the creditors would have no right to the insurance so exempt, and it is not alleged, nor does any proof appear in the record, that there were sufficient assets coming into the hands of the administrator independent of the insurance policies sufficient to pay the debts of the decedent in full. Nor does it appear that there was any negligence in collecting the assets, nor what amount was actually collected, or could have been collected by the exercise of reasonable diligence. From the allegations of the bill, if we eliminate the insurance policies, there would not appear sufficient assets to pay the debts of the several petitioners.

119 Miss.—42

It appears to us, under the facts of this record, that there was a reasonable showing made for the chancellor to set aside the decree *pro confesso* and final decree rendered thereon, and that the discretion of the chancellor should have been exercised, and the decree *pro confesso* and final decree set aside on defendant being taxed with the cost of the proceeding under the petition. It is not the purpose of the statute, nor of the courts, to permit the defendants to be negligent and to unreasonably delay the complainants or plaintiffs in a suit in having their rights adjudicated; but where it appears, as it does in this case, that the delay was caused through agencies beyond the control of the defendant, and that justice will be promoted by trying a case upon its merits, we think the decree should be set aside. The judgment of the court below is accordingly reversed, the decree *pro confesso* and final decree rendered thereon set aside, and the cause remanded with leave to the defendant to answer the bill.

*Reversed and remanded.*